United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 11, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

No. 03-40325
Summary Calendar

———————

EDMOND HADNOT,

Plaintiff-Appellant,

versus

BAY, LTD; FELIX CISNEROS; RAYMOND SAENZ; RAUL VELA,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
--------------------

Before JOLLY, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

Plaintiff-Appellant Edmond Hadnot appeals the district court's order severing the punitive and exemplary damages prohibition contained in the arbitration provision of the employment agreement at issue, and compelling arbitration. Hadnot claims that the district court erred in holding the arbitration provision of his employment contract valid and enforceable after striking the ban on the arbitrator's authority to award exemplary and punitive damages as applied to Hadnot's Title VII claim. We affirm.

## I. Facts and Proceedings

Hadnot filed suit in the district court against Defendant-Appellee Bay, Ltd. ("Bay") and three of his former coworkers,

alleging intentional infliction of emotional distress by all defendants and racial discrimination in violation of Title VII by Bay. Hadnot and Bay had entered into an employment agreement (the "Agreement") containing an arbitration provision. The district court compelled arbitration after invalidating a restriction in the arbitration provision that excludes punitive and exemplary damages from the kinds of damages that the arbitrator is authorized to award. Hadnot timely filed a notice of appeal.

## II.  Analysis

### A.  **Standard of Review**

We review a district court's grant or denial of a motion to compel arbitration de novo.[1]

### B.  **Test for Enforceability of Arbitration Provision**

Courts adjudicating a motion to compel arbitration engage in a two-step process. First, the court asks "whether the parties agreed to arbitrate [the] dispute."[2] If this question is answered in the affirmative, the court asks "whether legal constraints external to the parties' agreement foreclosed the arbitration"[3] of

---

[1] See Webb v. Investacorp, Inc. 89 F.3d 252, 257 (5th Cir. 1996).

[2] Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). In deciding this question, courts should apply "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc., v. Kaplan, 514 U.S. 938, 944 (1995).

[3] Mitsubishi Motors, 473 U.S. at 628.

the dispute.  The district court concluded that the Agreement was enforceable —— with the exception of its prohibition of the arbitrator's awarding exemplary and punitive damages —— and that Hadnot's claims fell within its scope.  We now turn to Hadnot's contentions on appeal.[4]

C.  **Consideration**

Hadnot asserts that, under Texas law, the Agreement is unsupported by valid consideration.  He contends that the only possible consideration on the part of Bay is "the consideration of [Hadnot's] application for employment, the offer of at will employment, and the continuation of at will employment."  Hadnot argues that two recent Texas Supreme Court cases, Light v. Centel Cellular Company[5] and In Re Halliburton Company and Brown & Root Energy Services,[6] stand for the proposition that such factors cannot constitute consideration in an at-will employment context. The facts of Light and In Re Halliburton distinguish them from the instant case, however; and we find the presence of valid Texas consideration on the part of Bay.

Light dealt with a covenant not to compete.  In its discussion

---

[4] Hadnot argues for the first time in his reply brief that the Agreement was substantively unconscionable.  As Hadnot failed to raise that argument in his initial appellate brief, we decline to consider it here.  See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").

[5] 883 S.W.2d 642 (Tex. 1994).

[6] 80 S.W.3d 566 (Tex. 2002).

3

of whether there was an "otherwise enforceable agreement" to which the covenant not to compete was ancillary, the Supreme Court of Texas noted that "[c]onsideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment."[7] The court reasoned that a promise "that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor."[8] In attempting to apply this reasoning to his own case, Hadnot urges that the Agreement's arbitration provision is likewise unsupported by valid consideration.

The _Light_ court, however, discussed invalidity of consideration in the context of a "*period of continued employment,*"[9] using the promise of a raise to an at-will employee as an example (illusory because the promisor can terminate employment before giving the raise).[10] In contrast, the consideration here ⸺ the combination of Hadnot's application and Bay's responding offer of employment ⸺ is in no way dependent on a period of continued employment in the context of a covenant to arbitrate claims that arise from the period of actual employment,

---

[7] _Light_, 883 S.W.2d at 644.

[8] _Light_, 883 S.W.2d at 645 n.5.

[9] _Light_, 883 S.W.2d at 644 (emphasis added).

[10] _Light_, 883 S.W.2d at 645 n.5.

4

regardless of how long it might continue. Here, the application, offer, and acceptance all occurred at the "front end" of the employment relationship. None is dependent on *continued* employment, and none is illusory, because any eventual arbitration will, of necessity, relate to conduct that occurred during the term of employment —— even if only a day or so —— unlike proscribed competition which by definition can occur only after employment terminates.

This was exactly the distinction made by the court in <u>In Re Halliburton</u>: "[In] contrast [to <u>Light</u>], the [Halliburton Dispute Resolution] Program is not *dependent* on continuing employment. Instead, it was *accepted* by the employee's continuing employment."[11]

The instant situation is analogous to <u>In Re Halliburton</u>, not <u>Light</u>. The Agreement was formed when Hadnot signed the document and began work. Even though Bay could terminate Hadnot at any time thereafter, the fact remains that Bay had already performed, viz., accepted Hadnot's job application, in exchange for Hadnot's agreement to arbitrate any claims arising out of any period of employment —— even one day. The <u>In Re Halliburton</u> court's language accurately sums up the situation presently before us: "Even if [the] employment had ended shortly thereafter, the promise to arbitrate would have been binding and enforceable."[12]

---

[11] <u>In Re Halliburton</u>, 80 S.W.3d at 569.

[12] <u>Id.</u>

5

D.   **Sequence**

Hadnot also claims that he had been offered the job prior to signing the Agreement, so that Bay's acceptance of his job application and offer of employment can only be past consideration, if they are consideration at all.[13]   The appropriate question, however, is whether Bay would have considered Hadnot's application and offered him employment had he refused to sign the Agreement, not whether Bay insisted that he sign the moment that he walked through the door.   It is clear that Bay's offer of employment was contingent on Hadnot's signing the Agreement.   Indeed, the Agreement itself specifies that Bay's acceptance of Hadnot's job application and any offer of employment is "[i]n exchange for" the willingness of the prospective employee to arbitrate all employment disputes.

E.   **Severability of the Punitive Damages Clause**

Hadnot also argues that the entire arbitration provision is void because the restriction of the arbitrator's power proscribing any award of exemplary and punitive damages — which is unlawful in

---

[13] Although Hadnot claims he was "told that [he] had the job before [signing] any papers," Bay asserts that Hadnot executed the Agreement on two occasions, both on submission of his application and after accepting the offer of employment.   The record supports Bay: There are two signed copies of the Agreement in the record, respectively dated December 28th and 29th, 2000, placing both before Hadnot's employment start date, which he has indicated was "[o]n or about January 2001."

the context of his Title VII claim[14] ⸺ is integral to the overall contract of employment and therefore cannot be severed.  We disagree.  The purpose of the arbitration provision is to settle any and all disputes arising out of the employment relationship in an arbitral forum rather than a court of law.  Even with its unlawful limitation on the types or permissible damage awards lifted, so that the decision maker is free to address punitive damages, the arbitration clause remains capable of achieving this goal.  In fact, the lifting of that illegal restriction enhances the ability of the arbitration provision to function fully and adequately under the law.

As a potential arbitrator in this case is now authorized to award punitive damages, as well as compensatory damages, Hadnot's rights under Title VII are fully protected.  The severing of such a prohibition or restriction serves to expand the scope of arbitration rather than reduce or impair it, thereby freeing that provision to fulfill its intended function.

### III.  Conclusion

For the foregoing reasons, the district court's order voiding

---

[14] As the district court correctly noted, the Agreement's ban on punitive and exemplary damages is unenforceable in a Title VII case.  The Supreme Court has held: "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).  Because Title VII provides for statutory punitive damages, the district court found the ban on such damages unenforceable.  We agree with that determination.

7

the prohibition of awarding punitive damages and compelling

arbitration is, in all respects,

AFFIRMED.