ACCEPTED
04-15-00268-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/14/2015 8:05:30 PM
KEITH HOTTLE
CLERK

# NO. 04-15-00268-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
7/14/2015 8:05:30 PM
KEITH E. HOTTLE
Clerk

## IN THE FOURTH COURT OF APPEALS
## SAN ANTONIO, TEXAS

AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., PAUL CAMPBELL, ROD SEAFORD, AND CHARLES OLIVER,

*Appellants*

v.

AUGUSTUS BRAY

*Appellee*

Original Proceeding from the 57th Judicial District Court
in Bexar County, Texas, The Honorable David A. Canales, Presiding

## APPELLANTS' REPLY BRIEF

DANNICK VILLASEÑOR-HERNANDEZ
Texas Bar No. 24072713
RUTH G. MALINAS
Texas Bar No. 08399350
**Plunkett & Griesenbeck, Inc.**
Catholic Life Building, Suite 900
1635 N.E. Loop 410
San Antonio, Texas 78209
(210) 734-7092 (telephone)
(210) 734-0379 (facsimile)
dhernandez@pg-law.com
rmalinas@pg-law.com
ATTORNEYS FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................2

   I.    Introduction ...............................................................4

   II.   Reply to Appellee's Enforceability Argument .........5

       A.   The Arbitration Agreement Is Not Illusory ..................5

       B.   The Arbitration Agreement to which Bray Agreed To Is Valid. ..................................................9

       C.   Campbell, Seaford, and Oliver Can Seek Enforcement of the Arbitration Agreement Contained in AAU National Policies. .........................................10

   III.  Bray's Claims are Within the Scope of the Broad Arbitration Agreement. ...............................................11

   IV.  Reply to Bray's Claim that the Arbitration Agreement is Unconscionable .......................................13

       A.   Bray Cannot Rely on Limitations Provision and Punitive Damages Provision to Render the Entire Arbitration Agreement Unconscionable. ......................13

       B.   Bray Failed to Show The Arbitration Forum Is Cost Prohibitive. ..................................................16

       C.   Bray Did Not Prove the Arbitration Agreement Was Substantively Unconscionable. ...................................18

CERTIFICATE OF COMPLIANCE .................................................20

CERTIFICATE OF SERVICE ...........................................................21

# TABLE OF AUTHORITIES

<u>Page</u>

**CASES**

*Aspen Technology v. Shasha,*
253 S.W.3d 857 (Tex.App. – Houston [14th Dist.] 2008, no pet.) ................. 8

*Fleetwood Enters., Inc. v. Gaskamp,*
280 F.3d 1069 (5th Cir. 2002) ..................................................................... 13

*Hadnot v. Bay, Ltd.,*
344 F.3d 474 (5th Cir. 2003) .................................................................. 13, 14

*In re AdvancePCS Health L.P.,*
172 S.W.3d 603 (Tex. 2005) ...................................................................... 5, 9

*In re C&H News Co.,*
133 S.W.3d 642 (Tex. App – Corpus Christi 2003, orig. proceeding) ............ 7

*In re Dillard Dept. Stores, Inc.,*
186 S.W.3d 514 (Tex. 2006) ........................................................................ 12

*In re Halliburton Co.,*
80 S.W.3d 566 (Tex. 2002). ........................................................................... 6

*In re Olshan Foundation Repair Co., LLC,*
328 S.W.3d 883 (Tex. 2010) ........................................................................ 19

*In re Palm Harbor Homes, Inc.,*
195 S.W.3d 672 (Tex. 2006) .......................................................................... 5

*In re Poly-Am., L.P.,*
262 S.W.3d 337 (Tex. 2008). .................................................................. 14, 15

*In re Polyamerica,*
296 S.W.3d 74 (Tex. 2009) ............................................................................ 9

*Long v. BDP Intern., Inc.,*
919 F.Supp.2d 832 (S.D.Tex. 2013) ...................................................... 13, 14

Morrison v. Amway Corp.,
49 F.Supp.2d 529 (S.D. Tex.1998) .............................................................. 18

Quinn v. EMC Corp.,
109 F.Supp.2d, 681 (S.D. Tx. 2000) ............................................................ 18

*Security Service Federal Credit Union v. Sanders,*
264 S.W.3d 292 (Tex. App. – San Antonio 2008, no pet.) ...................... 14, 15

*Tenet Healthcare, Ltd. v. Cooper,*
960 S.W.2d 386 (Tex. App. – Houston [14th Dist.] 1998, review dismissed
w.o.j.) ............................................................................................................. 5

*Vandeventer v. All American Life & Cas. Co.,*
101 S.W.3d 703 (Tex. App. – Fort Worth 2003, no pet.) .............................. 5

*Wade v. Austin,*
524 S.W.2d 79 (Tex. App. - Texarkana 1975, no writ) ................................ 17

*Webb v. Investacorp., Inc.,*
  89 F.3d 252 (5th Cir.1996) ........................................................................ 17


**STATUTES**
9 U.S.C. §3 ............................................................................................... 9
TEX. CIV. PRAC. & REM. CODE §171.001(a) ................................................. 9

## I. Introduction

The trial court erred in denying Appellants' Motion to Compel Arbitration because Appellee failed to establish that the arbitration agreement contained in AAU's National Policies was illusory or unconscionable. There was a mutual promise to arbitrate all civil disputes, and as such, Bray cannot refuse to submit his claims in the arbitral forum. As officers and/or directors of the AAU, Appellants Campbell, Oliver and Seaford can invoke the arbitration agreement with regard to Bray's claims against them. The broad arbitration agreement contained in the AAU National Policies encompasses Bray's causes of actions made the basis of his suit even if they were not specifically described in the provision.

Although Bray includes numerous reasons to find the arbitration agreement unconscionable, he failed to bring forth any evidence in support of his defense. The severability clause contained in the arbitration agreement prohibits Appellee from relying on the limitations and punitive damages provisions to render the entire arbitration agreement unconscionable.

## II.   Reply to Appellee's Enforceability Argument

### A.   The Arbitration Agreement Is Not Illusory.

In determining the validity of arbitration agreements subject to the Federal Arbitration Act, state law principles governing the formation of contracts apply. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). Arbitration agreements, like other contracts, must be supported by consideration. *Id.* An illusory promise is a promise that fails to bind the promisor, who retains the option of discontinuing performance. *Vandeventer v. All American Life & Cas. Co.*, 101 S.W.3d 703 (Tex. App. – Fort Worth 2003, no pet.). When illusory promises are all that support a purported bilateral contract, there is no consideration to support the contract. *Tenet Healthcare, Ltd. v. Cooper*, 960 S.W.2d 386 (Tex. App. – Houston [14th Dist.] 1998, rev dismissed w.o.j.). Consideration can be the bilateral promise to arbitrate. *In re Palm Harbor Homes* at 676. When an arbitration agreement is part of an underlying contract, the rest of the parties' agreement provides the consideration required to form a valid contract. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

Appellee claims that AAU's arbitration agreement is illusory because it did not contain a "savings clause" requiring notification of modifications or termination. In *Halliburton*, an at-will employee brought an action alleging discrimination. *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). Halliburton, the employer, was denied their motion to compel arbitration based on the arbitration agreement contained in their dispute resolution program. *Id.* The employer sent notice to the employee advising him that continuing employment would constitute acceptance of the new plan. *Id.* at 567. The Texas Supreme Court determined the arbitration agreement in an employer-employee relationship was not illusory, in part because the employee had notice of the proposed changes to his at-will employment contract and accepted them by continuing to work after a specified date. *Id.* at 573. Here, although amendments were made to the arbitration agreement in 2006 and 2009, Bray agreed to be bound to the revised language year after year with the renewal of his membership. Bray did not offer any contrary evidence. There is no evidence for this Court to consider that supports his allegation that AAU's amendments and addition were done absent any notice or prospective-only requirements. (Appellee's Brief at

6

p.11). Further, AAU is a volunteer organization. This fact distinguishes the instant case from *Halliburton* which involved an employer-employee relationship. If Bray did not agree to any revisions to the arbitration agreement, Bray could have chosen to not participate in any further AAU events and terminate his membership. However, Bray chose to continue his involvement with the AAU as a member and District Officer.

In *C&H News Co.*, the Court concluded the arbitration agreement was illusory because the employee handbook contained a provision in which the company expressly reserved the right to unilaterally amend the handbook, and in essence, could unilaterally change the scope of the arbitration agreement. *In re C&H News Co.*, 133 S.W.3d 642, 646 (Tex. App – Corpus Christi 2003, orig. proceeding). AAU's arbitration agreement does not contain such a reservation. (CR:41-42). There was no evidence before the trial court supporting Appellee's contention that AAU could avoid its promise to arbitrate.

In fact, in *Aspen Technology*, the Court was faced with interpreting the following provision:

7

> The incentive compensation plan administrator (Vice President of Worldwide Sales Operations) is responsible for the interpretation of the plan. If the meaning or interpretation of the plan wording requires clarification after consideration of all the facts, the Senior Vice President, Worldwide Sales, and Business Development (SVP Sales) or his/her designee, will issue a written ruling, which will be final. In addition, the SVP Sales will be responsible for periodic review of the plan *and may make revisions from time to time.*

*Aspen Technology v. Shasha*, 253 S.W.3d 857, 862 (Tex.App. – Houston [14th Dist.] 2008, no pet.)(emphasis added). Despite the last sentence, the court concluded that Aspen did not retain a unilateral, unrestricted right to modify or terminate the arbitration provision in that agreement. *Id.* at 863. As a matter of law, the arbitration agreement was not illusory. *Id.*

AAU's arbitration agreement unambiguously binds both the AAU and its members be bound by the promise to arbitrate. Further, the arbitration agreement does not contain any language indicating that AAU retains the unilateral right to modify or terminate the arbitration agreement. Therefore, the arbitration agreement is not illusory and should be enforced.

8

## B. The Arbitration Agreement to which Bray Agreed To Is Valid.

Appellee argues he only signed documents in his capacity as Governor of the AAU South District, and thus cannot not be bound to the arbitration agreement individually. Neither the FAA nor Texas law requires that arbitration clauses be signed as long as it is written and agreed to by the parties. *See* 9 U.S.C. §3; TEX. CIV. PRAC. & REM. CODE §171.001(a); *see In re Polyamerica*, 296 S.W.3d 74, 76 (Tex. 2009); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). The first sentence of the AAU arbitration agreement states that "[b]y applying for AAU membership […] or entering any AAU event," the member or participant has agreed to submit any civil disputes to arbitration. (CR:41). Even though Appellee claims he did not sign anything in his individual capacity, Bray agreed to be bound by the AAU Code, which includes the National Policies and arbitration agreement, when he applied and renewed his membership and paid his annual membership dues. (CR:44). Appellee cannot deny that he received notice and agreed to the terms each year when he renewed his membership.

Further, at the time of the incident, Bray was acting in his official capacity on the AAU's Jury of Appeals. (CR:3). Although the arbitration

agreement applies to applicants, members, and entrants, at all times relevant to the claims made in the lawsuit, Bray was much more than an AAU member – he was an elected officer for the AAU. As such, Bray had sufficient notice of the arbitration agreement, agreed to be bound by it, and under Texas law cannot refuse to abide by it.

### C. Campbell, Seaford, and Oliver Can Seek Enforcement of the Arbitration Agreement Contained in AAU National Policies.

Appellee seeks to avoid arbitration by claiming Campbell, Seaford and Oliver are not agents of AAU, and thus cannot invoke the AAU arbitration provision. Appellee's argument is defeated, however, by his own petition in which Bray predicates AAU's liability on allegations that the individual appellants were acting in the course and scope of employment by AAU and in furtherance of AAU's business when they committed the alleged acts leading to Bray's lawsuit. (CR:7). Appellee cannot have it both ways.

At the time of the incident made the basis of the Bray's lawsuit, Appellants Campbell, Oliver, and Seaford were all officers and/or directors of the AAU fulfilling the duties of their respective positions. (CR:3) The alleged acts Bray complains of took place during an AAU-sponsored event. (CR:3). Contrary to Appellee's argument, Campbell,

10

Oliver and Seaford did not expressly agree that they are not agents of the AAU. (Appellee's Brief at p.20). The "Agency" provision in the National Policies simply states that "membership" itself does not create an agency relationship. (CR:45). The AAU does not want members across the country representing themselves to be agents of the AAU without their written authorization. In this case, all three individual Appellants were acting as officers and/or directors rather than merely an AAU member present at an AAU-sponsored event.

Moreover, Appellants Campbell, Seaford and Oliver seek enforcement of the arbitration agreement contained in the AAU National Policies based on their AAU membership. They agreed to be bound by the same arbitration agreement as Appellee did. Further, the arbitration agreement states "[t]he parties agree that the binding arbitration shall be in lieu of any litigation by and between *all of the parties* related to the dispute." (CR:41).

III. <u>Bray's Claims are Within the Scope of the Broad Arbitration Agreement.</u>

In *In re Dillard Dept. Stores, Inc.*, Andrea Martinez, an employee of Dillard for almost twenty years, filed a lawsuit against Dillard alleging defamation after being terminated. *In re Dillard Dept. Stores,*

*Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). Martinez filed a lawsuit against Dillard, its district manager, and two unnamed employees. *Id.* Dillard moved to compel arbitration. Martinez argued her defamation claim was not within the scope of the agreement, which specifically listed claims subject to arbitration. *Id.* at 516. However, the Texas Supreme Court found that defamation was covered under the arbitration agreement because defamation is a personal injury (one of the specific claims subject to arbitration), and directed the trial court to order all claims proceed to arbitration under the Federal Arbitration Act. *Id.*

The AAU arbitration agreement was purposefully drafted to include a broad range of claims, and thus "civil disputes" was used to identify the claims that would be subject to arbitration. (CR:41). By applying for membership with AAU, an applicant agrees to comply with all provisions contained in the AAU Code, including the arbitration agreement. (CR:43). Further, when Bray submitted his annual membership dues, he agreed to be bound by the AAU Code, including all AAU Policies, including the arbitration agreement. (CR:44). Therefore, Bray should be bound and compelled to arbitrate his claims

12

filed against AAU and the individual Appellants, Campbell, Oliver, and Seaford.

## IV. Reply to Bray's Claim that the Arbitration Agreement is Unconscionable

### A. Bray Cannot Rely on Limitations Provision and Punitive Damages Provision to Render the Entire Arbitration Agreement Unconscionable.

When determining if an arbitration agreement is unconscionable, the Court must examine the totality of the circumstances surrounding the formation of the agreement. The "only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Long v. BDP Intern., Inc.*, 919 F.Supp.2d 832, 845 (S.D.Tex. 2013)(quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir.2002).

Bray argues the arbitration agreement is substantively unconscionable because it imposes a one-year limitations period and prohibits an award of punitive or exemplary damages. Even if these provisions were "unconscionable", the agreement's severance clause (CR:41) would allow those provisions to be severed without invalidating the entire argument. *Hadnot v. Bay, Ltd.*, 344 F.3d 474 (5th Cir. 2003);

13

*Security Service Federal Credit Union v. Sanders*, 264 S.W.3d 292, 300 (Tex. App. – San Antonio 2008, no pet.).

In *Hadnot*, the arbitration agreement precluded the arbitrator from awarding any punitive or exemplary damages. See *Id.* at 478. The Fifth Circuit held that the punitive damage provision did not render the arbitration agreement unconscionable. *Id.* Even though the agreement at issue did not have a severance clause, the Court held that the unenforceable provision could be severed because doing so still allowed the arbitration clause to remain capable of achieving its purpose. *Id.* The relevant inquiry is "whether or not the parties would have entered into the agreement absent the unenforceable provisions." *Long* at 846 (quoting *In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008). In *Long*, the Court found that severance of a one-year limitations period provision was appropriate. *Id.* In any event, here Appellants have not asserted limitations.

In *In re Poly-Am.*, the arbitration agreement contained the following severability clause:

> "Should any term of this Agreement be declared illegal, unenforceable, or unconscionable, the remaining terms of the Agreement shall remain in full force and effect. To the extent possible, both Employee and Company desire that the

14

> Arbitrator modify the term(s) declared to be illegal, unenforceable, or unconscionable in such a way as to retain the intended meaning of the terms as closely as possible."

*In re Poly-Am.* at 860.

With regard to Bray and AAU, there is no evidence that the parties would not have entered into the agreement absent the one-year limitations period and provision prohibiting punitive or exemplary damages. AAU's arbitration agreement contains a severability clause similar to the one found in *In re Poly-Am.*, which expressly states:

> If any portion of the arbitration agreement shall be declared invalid or unenforceable, the rest of the agreement (to so arbitrate) shall remain in full force and effect.

(CR:41). By seeking enforcement of the entire general arbitration agreement, AAU did not waive its right to have the punitive damages or statute of limitations clause severed. As a result, Appellee cannot rely on the limitations or punitive damage provision to render the entire arbitration agreement unconscionable. In order to promote public policy favoring arbitration, Bray should be compelled to arbitrate his claims against all Appellants. *See Security Service Federal Credit Union v. Sanders*, 264 S.W.3d 292, 301 (Tex.App – San Antonio 2008, no pet.)

15

### B. Bray Failed to Show The Arbitration Forum Is Cost Prohibitive.

Bray argues that arbitration agreement is substantively unconscionable because the costs imposed are excessive and would prevent Bray from asserting his rights in an arbitration proceeding. (Appellee's Brief at p.34). However, he failed to bring forth any evidence to show that arbitration of his claims would be unconscionable on the ground that the arbitral forum was cost prohibitive. Appellee claims the costs are excessive because he is unable to pay the arbitration fees and costs and cannot afford to travel to Florida for arbitration. (Appellee's Brief at p.34). However, there is no evidence in the record regarding his financial position which prohibits him from paying the arbitration fees. Bray's conclusory affidavit states he cannot afford it, but no evidence to support that statement was included. In addition, Bray claims this litigation is of no cost to him because the contingency fee agreement does not obligate him to pay for litigation expenses unless a recovery is made on his behalf. (CR:111).

Bray also argues that being forced to arbitrate in Florida would be a "serious financial burden on Appellee and would effectively prevent

[him] from asserting his rights in an arbitration proceeding." (Appellee's Brief at p. 35-36).

In *Webb v. Investacorp, Inc.*, the court upheld an arbitration provision that called for the Texas-based plaintiff to proceed with arbitration in the county where the Florida defendant maintained its executive offices. *Webb v. Investacorp., Inc.*, 89 F.3d 252 (5th Cir.1996) The court held that "while the venue and cost provisions may be disfavorable to the Webbs, the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed if fairly and voluntarily." *Webb* at 259 (5th Cir.1996)(quoting *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App. - Texarkana 1975, no writ)). As in *Webb*, Bray, a Texas resident, agreed to be bound by an arbitration agreement that had a Florida venue provision, should be compelled to arbitrate his claim in Florida.

The argument that Bray would have to seek new counsel in Florida, which may involve an hourly-fee arrangement instead of a contingency fee arrangement, is insufficient to render the arbitration agreement unconscionable. Further, Appellee has failed to cite a single

17

case to support his position with regard to the forum selection contained in the arbitration agreement.

### C. Bray Did Not Prove the Arbitration Agreement Was Substantively Unconscionable.

Bray has also failed to show that the terms of the arbitration agreement were so "one-sided or oppressive" they constitute substantive unconscionability. Quinn v. EMC Corp., 109 F.Supp.2d, 681, 686 (S.D. Tx. 2000). Bray failed to offer any evidence showing that "no man in his senses and not under a delusion would enter into and ... no honest and fair person would accept a contract on such terms." Id.(quoting Morrison v. Amway Corp., 49 F.Supp.2d 529,534 (S.D. Tex.1998)). Under the terms of AAU's arbitration agreement, both parties agree to forego civil litigation and submit all civil disputes to arbitration. Nothing in the agreement is so one-sided or oppressive that it is unconscionable.  Bray has cited no case in which the provisions about which he complains of invalidated an entire arbitration agreement.

Although Bray argues various reasons he claims should justify finding the arbitration agreement unconscionable, he did not present any evidence for the trial court to make that determination. The affidavits contained in the record (Bray's and his attorney's affidavit)

18

are conclusory and speculative, and do not meet the standard required to show that Bray will incur excessive costs in arbitrating his claims. Bray submitted no evidence with regard to the expected cost differential between arbitration and litigation, which the most important of three factors the Texas Supreme Court considered when determining if an arbitration agreement was unconscionable. *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 893-894 (Tex. 2010). As such, this Court should disregard Bray's reasons as, without evidence, they cannot support his substantive unconscionability argument.

<u>CONCLUSION AND PRAYER</u>

For the foregoing reasons, Appellants respectfully request that this Court reverse or vacate the trial court's April 14, 2015 *Order Denying Defendants' Motion to Compel Arbitration and Abate Proceedings Pending Arbitration* and order the trial Court to abate the proceedings so that the Parties may proceed with arbitration in Orange County, Florida. Appellants pray for such other and further relief as they may be entitled.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies this Appellants' Reply Brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4(i)(2)(C). The undersigned prepared the Appellants' Brief using Microsoft Word 2013 and is relying on that software's word-count function.

Exclusive of the exempted portions listed in Texas Rule of Appellate Procedure 9.4(i)(2)(C), the brief contains 2,999 words.

Respectfully submitted,

LEWIN PLUNKETT
Texas Bar No. 16079000
DANNICK VILLASEÑOR-HERNANDEZ
Texas Bar No. 24072713
Plunkett & Griesenbeck, Inc.
Catholic Life Building, Suite 900
1635 N.E. Loop 410
San Antonio, Texas 78209
(210) 734-7092 (telephone)
(210) 734-0379 (facsimile)
lplunkett@pg-law.com
dhernandez@pg-law.com

/s/ Dannick Villaseñor-Hernandez
DANNICK VILLASEÑOR-HERNANDEZ

COUNSEL FOR APPELLANTS

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing Appellants' Brief has been forwarded this 14th day of July, 2015, to the following attorneys of record via the method stated:

Jerry Galow                                          *Via E-Mail*
Justin Studdard                                      *Via E-Mail*
Galow & Smith, P.C.
1204 Nueces
Austin, Texas 78701

                    /s/ Dannick Villaseñor-Hernandez
                    DANNICK VILLASEÑOR-HERNANDEZ